MICHAEL MARTIN, Appellee, v. WILLIAM B. MURPHY, Appellant.

**Assault and Battery**: DAMAGES: INSTRUCTIONS TO JURY. In an action for damages on account of an assault, made by the defendant upon the plaintiff, the court instructed the jury that, if they found for the plaintiff as to the fact of the assault, they should next determine the amount of damages the plaintiff should be allowed by reason of the alleged injuries, "and that he should be allowed such sum as would reasonably compensate for the alleged physical pain which he claims to have suffered by reason of the alleged injuries." *Held*, that the court having elsewhere in its charge directed the jury to find the facts as established by a preponderance of the evidence, and to render such verdict as was warranted by the testimony, the above instruction was not subject to the objection that it warranted the jury in finding against the defendant without regard to the evidence.

*Appeal from Iowa District Court.—*HON. S. H. FAIRALL, Judge.

FRIDAY, MAY 27, 1892.

ACTION to recover damages for an alleged assault and battery. There was a trial by jury, resulting in a

verdict and judgment for the plaintiff for three hundred dollars.    The defendant appeals.—*Affirmed*.

*J. H. Feenan* and *Hedges, Rumple & Lake*, for appellant.

*D. H. Wilson* and *H. H. Sheldon*, for appellee.

ROTHROCK, J.—There is no dispute that the plaintiff and defendant had a personal encounter with each other, in which the defendant was the victor, and the plaintiff was considerably injured.  The plaintiff claims that the assault was commenced by the defendant, and that it was so brutal that two or three of the plaintiff's ribs were broken, and he was otherwise greatly injured. The defendant, in his answer, in addition to a general denial, pleads that the plaintiff first assaulted him in a violent, rude, and angry manner with a loaded revolver, with intent to do great bodily injury to the defendant, and to defend himself the defendant did strike and beat the plaintiff, using no more force than was reasonably necessary to protect and defend himself.   It appears that the parties own and reside upon adjoining farms. Two of the defendant's horses came upon the plaintiff's premises in the night time, and in the morning the plaintiff put them in a pasture, with intent to distrain them for damages done at that time, and also to hold them for some alleged damages which other trespassing animals of the defendant had previously done. The defendant went after his horses early in the morning, and very soon after the plaintiff had put them in the pasture, and the parties had a dispute about the amount of damages, and, against the protest of the plaintiff, the defendant went to the pasture and secured his horses, and attempted to take them away.   The plaintiff had a revolver, and at first threatened the defendant, and held the revolver in his hand.   Afterwards he put the revolver in his pocket, and manifested

no intention to use it, and went to a gate, where it would be necessary for the defendant to take his horses off the plaintiff's premises, and sought, by keeping the gate closed, to prevent the defendant from going through the gate with his horses. It was at this gate, and in the struggle to keep it closed, that the injuries to the plaintiff were inflicted. The plaintiff was holding the fastenings of the gate, and the defendant, endeavoring to open it, and the evidence is somewhat in conflict as to which party struck the first blow. It is certain that, if the plaintiff struck the defendant at all, it was but once, and very slightly at that. The defendant was much superior to the plaintiff in physical strength. The defendant testified as a witness on the trial that he knew he was a better man physically than the plaintiff. He claimed that the plaintiff struck first. His account of the fight, as given in his cross-examination as a witness, was as follows: "When he struck me it didn't hurt very bad. He struck me with his right hand, and the revolver was in it. I saw it. He struck me on the head, right down that way [on the left side of head], when I stooped down to raise the lever. When he struck me I was going through there. When I struck he turned a somersault, was my idea of it. I followed him right up. I said I stood right on my feet, and held him by the whiskers, and hit him a good many times. I don't know how many. I said awhile ago I pumped it to him. I said he asked for quarter, and simultaneously Mrs. Martin came in and pushed me." The evidence in behalf of the plaintiff was to the effect that after the defendant knocked the plaintiff down he got on his body with his knees, and the claim is that the plaintiff's ribs were broken in that way. It appears in evidence that immediately after the affray the plaintiff got on one of his own horses and started to have the defendant arrested. After proceeding some distance on the way he was compelled to stop at one Hoyt's on

account of extreme pain in his left side, and he was taken back home in a carriage. A witness for the defendant testified that while the plaintiff was on his horse on the way to Hoyt's the horse fell with him, and that when the plaintiff got up from his fall he manifested by his actions that he had been injured by the fall. The plaintiff denies that his horse stumbled and fell, and claims that no such thing, nor anything like it, occurred.

We do not understand that counsel for the appellant claim that the evidence was not sufficient to authorize a verdict for the plaintiff. No such claim could be made with any show of success before any court or jury. Indeed the testimony of the defendant alone convicts him of very brutal conduct towards the plaintiff. Even conceding that the plaintiff made an exorbitant claim for damages done by trespassing animals, and that the plaintiff struck the defendant a slight blow at the gate, the punishment inflicted by the defendant on the plaintiff was far in excess of anything demanded for his defense; and according to his own statement this was continued, and only ceased when the plaintiff's wife appeared in the defense of her husband. When the defendant struck the plaintiff such a blow as to cause him to turn a "somersault," that was the time to stop the fight, at least until the plaintiff should show some disposition to renew hostilities. We have given the facts somewhat fully, for the reason that it is claimed with great confidence, and argued with marked ability and ingenuity, that the court committed grave errors in certain instructions to the jury by which the jury were warranted in finding the defendant guilty without regard to the evidence. That part of the charge to the jury which is claimed to be erroneous is as follows:

"*Twelfth.* If, in the light of the foregoing instructions, and under the testimony, you find for the plain-

tiff, you will next determine the amount of damages, if any, which you will allow him by reason of the alleged injuries.

"*Thirteenth.* Such damages embrace the reasonable expenses, if any, incurred for medical treatment necessary by reason of such alleged injuries; the reasonable value of the loss of time, if any, by plaintiff from inability to labor, occasioned by reason of such alleged injuries; and such sum as will fairly compensate the plaintiff for physical pain, if any, suffered by him resulting from the alleged injuries."

"*Fifteenth.* While there is no testimony before you placing an estimate in dollars and cents as to the amount of damages, if any, sustained by plaintiff by reason of his alleged physical pain, it is your duty to, in the light of the evidence, determine, in the exercise of a fair discretion, what sum, if any, he is entitled to for such pain, and will reasonably compensate him for the alleged physical pain, which he claims to have suffered by reason of the alleged injuries."

"*Eighteenth.* If you find from the evidence that the defendant struck and beat the plaintiff in a rude, violent, and angry manner, or otherwise injured him, as alleged in said petition, and that the alleged wrongful acts of the defendant were not done in self-defense or the taking of his property, as explained above, and that such alleged beating, striking and injuring of the plaintiff was done in an ignominious manner before plaintiff's wife and children, and with intent to injure his person, and for the purpose of gratifying a malicious purpose then you may allow the plaintiff, in addition to compensatory damages, exemplary damages in such an amount as in your discretion you deem necessary and proper to restrain the defendant and others from the commission of like acts in the future; but in no event will your verdict exceed fifteen hundred dollars."

It is claimed in argument that by the twelfth, thirteenth and fifteenth paragraphs of the charge the jury is directed to allow damages for the "alleged injuries," and for such alleged physical pain as the plaintiff "claims to have suffered by reason of the alleged injuries." If these instructions were all that the court gave to the jury there would, no doubt, be much ground for the position claimed by the appellant's counsel that the alleged injuries were such as were set out in the petition, and that the damages for pain and suffering were such as the plaintiff claimed, and that the jury were to look no further than the alleged claims of the plaintiff upon which to base a verdict. And it is true, as claimed by counsel, that there was a conflict in the evidence as to whether the plaintiff's ribs were broken by the defendant. But these instructions do not direct the jury that they are to disregard the evidence in the case. On the contrary, in paragraph twelve, the jury are directed what they should do "in the light of the foregoing instructions, and under the testimony," if they should find for the plaintiff. What follows are merely rules to be observed in determining the amount of the verdict. It has many times been held by this court that all of the instructions must be considered together as a whole. The court, in the paragraphs of the charge preceding those complained of, very fully, and we think, correctly, instructed the jury as to the law of self-defense and all other questions involved in the case, and all through direct reference is made to what the jury should do in case they found certain facts to be established by a preponderance of the evidence. Nearly every paragraph is based upon what the jury may find from the evidence; and in paragraph nineteen of the charge the jury were instructed, by way of caution, as follows: "You will take this case, and carefully consider all the evidence before you, and all the facts and circumstances thereof, and be governed by the law as given

you, and by none other, and render such a verdict as
is warranted by the testimony, and in accord with
these instructions." In view of the fact that the jury
were thus directed again and again to base their find-
ings upon the evidence, and that there is no necessary
repugnance in the instructions, it is apparent to us that
the jury could not have understood that they were to
find the facts to be such as were alleged by the plaintiff
without regard to the evidence in the case. The use of
the words "alleged injuries" would surely be under-
stood to be such of the alleged injuries as they found
were established by the evidence. There are one or
two other errors assigned, but which do not appear
to be relied upon with any confidence, and which
seem to us to be of so little consequence as to demand
no consideration.

Our conclusion is that the judgment of the district
court should be AFFIRMED.